<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PEDRO LUNA,** | |
| Plaintiff, | **Civil Action No. 14-6953 (ES)** |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Pedro Luna seeking review of an Administrative Law Judge's ("ALJ") decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

**I. Background**

Plaintiff is a 49-year-old man who alleges disability due to numerous impairments, including Hepatitis C, back problems, arthritis, asthma, and diabetes. (D.E. No. 5, Administrative Record ("Tr.") at 208, 212). Plaintiff filed applications for SSI and DIB on May 5, 2011, alleging disability as of April 1, 2007. (*Id.* at 189-198). Plaintiff later amended his alleged disability onset date to August 1, 2008. (*Id.* at 10, 86-87). His applications were denied initially, (*id.* at 88-103), and again on reconsideration, (*id.* at 104-123). Plaintiff subsequently requested a hearing before

an ALJ, and the hearing was held on February 5, 2013, in front of ALJ Elias Feuer. (*Id.* at 18-87 144-145).

On February 15, 2013, ALJ Feuer issued an unfavorable ruling for Plaintiff, finding that he was not disabled. (*Id.* at 10-17). Plaintiff requested a review of the ALJ's decision on April 19, 2013, and the Appeals Council of the Social Security Administration denied the appeal on September 2, 2014. (*Id.* at 1-5, 272-73). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). *See* 20 C.F.R. § 404.981.

On November 6, 2014, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The administrative record was filed on January 12, 2015, (D.E. No. 5), and the parties briefed the issues raised by Plaintiff's appeal. (D.E. No. 8, Brief in Support of Plaintiff Pedro J. Luna ("Pl. Mov. Br."); D.E. No. 9, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The matter is now ripe for resolution.

**II.     Legal Standards**

    **A.     Standard of Review**

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision."  *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Standard for Awarding Benefits

To be eligible for DIB or SSI under Titles II and XVI of the Social Security Act, a claimant must establish that he or she is disabled as defined by the Act.  *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI).  Additionally, claimants seeking DIB must satisfy the insured status requirements set forth in § 423(c), while those seeking SSI must fall within the income and resource limits set forth in §§ 1382a and 1382b.

An individual is deemed disabled under both titles if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(a) (regarding DIB), 1382c(a)(3)(A) (regarding SSI).  The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4). If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops. *Id.* Proper procedure also requires that the Commissioner determine the individual's residual functioning capacity ("RFC") before proceeding to step four. 20 C.F.R. § 404.1520(e), 416.920(e). RFC is defined as the most the individual is capable of doing despite his limitations, including those that are not severe, and it is based on all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).

### III.     ALJ Feuer's Decision

ALJ Feuer applied the five-step disability evaluation process required by 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), and determined that Plaintiff was not disabled under the Social Security Act.  (Tr. at 10-17).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of August 1, 2008.  (*Id*. at 12).  At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "disorders of the back; diabetes mellitus; and arthritis." (*Id.*).  The ALJ further noted that, while the record also references Hepatitis C, asthma, and kidney stones, "there is no evidence to show that these impairments have the requisite limiting effects on the claimant's ability to perform basic work activities." (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id.* at 13). In support, the ALJ noted that the medical evidence "does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumber stenosis as required under listing 1.04. Moreover, there is no evidence that the claimant's back disorder has resulted in any inability to ambulate effectively . . . ." (*Id.*).

At step four, the ALJ determined that Plaintiff had the RFC "to perform light work . . . except that he is limited to performing only frequent climbing of ramps and stairs, as well as frequent balancing, stooping, kneeling, crouching, and crawling." (*Id.*).  The ALJ noted that, "[i]n making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the medical evidence and other evidence." (*Id.*).  The ALJ noted that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence, and limiting

effects of those symptoms were not entirely credible. (*Id.* at 14). The ALJ then determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 15).

At step five, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that Luna could perform. (*Id.*). In arriving at this conclusion, the ALJ consulted the Medical-Vocational Guidelines ("the grids") as well as a vocational expert ("VE"). (*Id.* at 15-16). The VE testified that given all the above factors, an individual such as Plaintiff would be able to perform the requirements of representative occupations such as cleaner/housekeeper, sealing and cancelling machine operator, and machine packer. (*Id.* at 16). Based on his analysis of the record, the ALJ determined that Plaintiff would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.*). Therefore, the ALJ concluded that a finding of "not disabled" was appropriate. (*Id.*).

**IV.     Discussion**

Plaintiff argues that ALJ Feuer's decision was not supported by substantial evidence for four reasons. First, Plaintiff argues that the ALJ erred at step two by finding that Plaintiff's asthma and Hepatitis C were not "severe" impairments. (Pl. Mov. Br. at 11-21). Second, Plaintiff argues that the ALJ erred at step three by failing to consider the effects of all of Plaintiff's impairments in combination. (*Id.* at 21-25). Third, Plaintiff argues that the ALJ failed to support his RFC determination with substantial evidence. (*Id.* at 25-34). And fourth, Plaintiff argues that the ALJ erred at step five by failing to take all of Plaintiff's credibly established impairments into account in the hypothetical posed to the VE. (*Id.* at 34-36). The Court will address each of Plaintiff's arguments in turn.

### A. Severity of Plaintiff's Impairments at Step Two

Plaintiff argues that ALJ Feuer's determination at step two was not supported by substantial evidence for two reasons. First, Plaintiff argues that ALJ Feuer erred in finding that Plaintiff's asthma was "under control," and thus not severe. (Pl. Mov. Br. at 17-18). And second, Plaintiff argues that the ALJ impermissibly relied on the fact that Plaintiff was not taking medication for Hepatitis C in concluding that his Hepatitis C was not severe. (*Id.* at 19-20).

To demonstrate a "severe" impairment, an applicant has the burden to show something more than a slight abnormality or a combination of slight abnormalities which cause "more than minimal functional limitations." 20 C.F.R. § 416.924(c); *see also Cacere v. Comm'r of Soc. Sec.*, 189 F. App'x 59, 63 (3d Cir. 2006). It is well settled that a disability "is not determined merely by the presence of a diagnosed impairment, but by the effect that the impairment has upon the individual's ability to perform substantial gainful activity." *Van Mook v. Astrue*, No. 10-876, 2011 WL 3875527, at *2 (W.D. Pa. Aug. 31, 2011) (citing *Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir. 1991)). Thus, an impairment may be deemed non-severe where its effects can be effectively controlled through treatment or medication. *See Roberson v. Colvin,* No. 14-218, 2015 WL 4207154, at *8 (D.N.J. July 2, 2015) (citing *Dearth v. Barnhart*, 34 F. App'x 874, 875 (3d. Cir. 2002)). In particular, a claimant's asthma may be found non-severe where the claimant uses an albuterol inhaler to treat his asthma, and does not present evidence of specific functional limitations resulting from the impairment. *See Hart v. Colvin*, No. 13-5, 2013 WL 4786061, at *7 (W.D. Pa. Sept. 6, 2013).

In addition, although an ALJ may not rely entirely on the fact that a claimant is not treating a symptom in determining the severity of that symptom at step two, *see Connor v. Barnhart*, No. 02-009, 2003 WL 57901, at *5 n.8 (E.D. Pa. Jan. 6, 2003), such lack of treatment may be still

probative of an impairment's non-severity when considered in combination with other factors in the record. *See D'Arrigo v. Barnhart*, No. 05-5394, 2006 WL 2520524, at *3-4 (E.D. Pa. Aug. 23, 2006).

### 1. Severity of Plaintiff's Asthma

In determining that Plaintiff's asthma was not severe, the ALJ referenced a report by an independent medical examiner which stated that Plaintiff "had asthma since he was 15 and that his asthma was under control." (Tr. at 13). The relevant portion of that report states, in more complete part: "[t]he claimant said that he was diagnosed with asthma 31 years ago. He denies hospitalization for exacerbation of asthma. He said that the last attack was a few months ago, it was caused by exertion, it lasted a few minutes and was relieved by albuterol inhaler." (*Id.* at 369). While the record thus contains evidence of Plaintiff's asthma, Plaintiff does not point to any evidence of functional limitations resulting from that impairment. Therefore, Plaintiff has not met his burden of showing the severity of his asthma at step two. *See Cacere*, 189 F. App'x at 63 (placing burden on plaintiff to show that an impairment created specific functional limitations).

Accordingly, the Court affirms the ALJ's step two conclusion that Plaintiff's asthma was not a severe impairment. *See Hart*, 2013 WL 4786061, at *7 (affirming ALJ's finding that asthma was non-severe because "[a]lthough [claimant] testified that she used an albuterol inhaler to control her asthma, she did not present evidence suggesting that specific functional limitations resulted from that impairment").

### 2. Severity of Plaintiff's Hepatitis C

In determining that Plaintiff's Hepatitis C did not constitute a severe impairment at step two, the ALJ noted that Plaintiff "is not reported to be on any medication or receiving any treatment for his hepatitis C, and there is no indication that this condition results in any debilitating

limitations." (Tr. at 13). Plaintiff does not point to any evidence in the record indicating such limitations, and the Court's review of the administrative record similarly reveals none. Thus, while the ALJ could not base his severity determination solely on the fact that Plaintiff was not treating his Hepatitis C, *Connor*, 2003 WL 57901, at *5 n.8, Plaintiff nevertheless failed to meet his burden of showing that his untreated Hepatitis C created any specific functional limitations, s*ee Cacere*, 189 F. App'x at 63. Accordingly, the Court affirms the ALJ's step two conclusion that Plaintiff's Hepatitis C was not severe.[1]

### B. Combination Analysis at Step Three

Plaintiff next argues that ALJ Feuer erred at step three by failing to consider the effects of Plaintiff's impairments in combination. (Pl. Mov. Br. at 23-25). In support, Plaintiff notes that in the section of the administrative opinion containing the ALJ's step three conclusions, the ALJ explicitly discusses only one of Plaintiff's three severe impairments and its corresponding listing, while failing to address Plaintiff's other severe and non-severe impairments. (*Id.*).

At step three, "the ALJ must compare the claimant's medical evidence to a list of impairments presumed severe enough to preclude any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). However, the ALJ need not "use particular language

---

[1] Plaintiff also argues that, because Plaintiff's asthma and Hepatitis C were deemed non-severe at step two, they were not afforded any consideration throughout the rest of the ALJ's disability analysis. (Pl. Mov. Br. at 18, 20). The Court disagrees. At steps three and four, the ALJ is required to consider all of a claimant's medically determinable impairments regardless of severity. *See Grimes v. Colvin*, No. 13-1382, 2014 WL 2533214, at *2 (W.D. Pa. June 5, 2014) ("At step three of the analysis, even if an impairment is non-severe, an ALJ must consider the limitations caused by those impairments when arriving at an RFC."). Here, although the ALJ does not explicitly discuss Plaintiff's asthma or Hepatitis C at each subsequent step, the Court is satisfied that the ALJ met his obligation to consider Plaintiff's non-severe impairments as required. *See Marquez v. Astrue*, No. 10-0463, 2011 WL 835604, at *8 (D.N.J. Mar. 4, 2011) (affirming administrative decision where ALJ did not discuss claimant's non-severe impairment at steps three or four, but "made reference to it in earlier portions of his opinion, indicating that he had in fact considered it").

or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Thus, an ALJ need not explicitly discuss every applicable listing or combination of impairments at step three, so long as the opinion, read as a whole, indicates that the ALJ considered the proper factors in arriving at his ultimate conclusion. *See id.*; *Holloman v. Comm'r of Soc. Sec.*, No. 14-589, 2015 WL 1346167, at *2 (D.N.J. Mar. 25, 2015). And further, "an ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.*, No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)).

Here, the ALJ's discussion of Plaintiff's impairments at step three is indeed sparse; as Plaintiff points out, that section of the administrative opinion only discusses Plaintiff's back problem, and refers only to the listing relevant to that impairment. (Tr. at 13). However, the ALJ also states that he considered plaintiff's impairments in combination, and concluded that he did not have "an impairment or combination of impairments that meets or medically equals the severity" of one of the listings. (*Id.*). This statement is supported by the ALJ's discussion of Plaintiff's impairments throughout the other portions of the administrative opinion. For example, at step two, the ALJ discusses Plaintiff's Hepatitis C, asthma, and kidney stones. (*Id.* at 12). And at step four, the ALJ notes that "the record also reflects that the claimant suffers from diabetes. However, the record notes that his glucose readings have been under control." (*Id.* at 14). The fact that the ALJ stated that he considered Plaintiffs impairments in combination—and explicitly discussed each impairment in the opinion—suffices to meet the ALJ's requirement to consider Plaintiff's impairments both individually and in combination. *See Jones*, 364 F.3d at 505;

*Granados*, 2014 WL 60054, at *9. Accordingly, the Court affirms the ALJ's combination analysis at step three.

### C. RFC Analysis at Step Four

Plaintiff argues that ALJ Feuer erred at step four for two reasons. First, Plaintiff argues that the ALJ disregarded relevant evidence supporting Plaintiff's subjective complaints of back pain in determining that his complaints were "not entirely credible." (Pl. Mov. Br. at 29-34). Specifically, Plaintiff argues that the ALJ never considered Plaintiff's testimony that "his back pain made it hard to stand, that he is tired, fatigued, and sleeps a lot," and that he took medication for his back pain. (*Id.* at 32-33). And second, Plaintiff argues that the ALJ erred by relying on a state agency medical consultant's assessment of Plaintiff's RFC for "light work" while improperly disregarding other evidence which supported a more restrictive RFC. (*Id.* at 28-29, 34). The Court addresses each argument below.

#### 1. Subjective Complaints of Pain

In assessing a claimant's RFC, the ALJ must take into account the claimant's subjective complaints regarding the symptoms of his impairments, but only to the extent that his complaints can "reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Thus, the ALJ "is not obliged to accept without question the credibility of such subjective evidence." *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988). Rather, an ALJ "may reject a claimant's subjective complaints when the ALJ specif[ies] his reasons for rejecting the[ ] claims and support[s] his conclusion with medical evidence in the record." *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 158 (3d Cir. 2013) (citation and internal marks quotation omitted). And finally, "[c]ourts generally afford the ALJ's credibility assessment great deference, because the ALJ is in the best position to evaluate the

demeanor and attitude of the plaintiff." *Nihat Bek v. Comm'r of Soc. Sec.*, No. 14-02694, 2015 WL 3461067, at *4 (D.N.J. June 1, 2015).

In finding that Plaintiff's allegations of complete disability since August 2008 were not entirely credible, the ALJ noted that

> the first reference to his alleged back pain is during a September 8, 2010 examination with Dr. Jimma. The claimant reported a history of back pain for three years, but Dr. Jimma noted that he was in no acute distress. An x-ray was advised and the claimant was prescribed Flexeril and Mobic. He had no additional follow-up until May of 2011 when he reported similar complaints of back pain and was prescribed the same medication. He was diagnosed with a lumbar back strain.

(Tr. at 14). The ALJ concluded by noting that treatment records do not indicate that his complaints were ever corroborated by x-rays or an MRI of his back. (*Id.*). Thus, despite Plaintiff's contentions, it appears that the ALJ did in fact consider Plaintiff's complaints of back pain and his prescription for pain medication. Additionally, the Court finds that this discussion meets the ALJ's requirement to justify his credibility determination with substantial evidence. *See LaCorte*, 678 F. Supp. at 83-84 (affirming ALJ's determination that claimant's complaints of pain lacked credibility where they were not supported by objective medical evidence).

### 2. The State Agency's Medical Report

Because state agency medical consultants are experts in the Social Security disability programs, ALJs are required to consider their findings of fact about the nature and severity of an individual's impairments. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing SSR 96-6P, 1996 WL 374180 at *2). Thus, while courts are not bound by findings made by state agency consultants, they may not ignore these opinions and must explain the weight given to the opinions in their decisions. 20 C.F.R. § 404.1527(e)(2)(ii); SSR 96-6P, 1996 WL 374180 at *2.

Here, the ALJ considered a state agency opinion that Plaintiff was capable of light work, and ultimately agreed with this assessment. (Tr. at 14). Contrary to Plaintiff's assertions, however, the state agency assessment was not the only evidence considered by the ALJ in arriving at his RFC determination. As noted above, the ALJ considered Plaintiff's subjective complaints of pain, Plaintiff's prescribed pain medication, the medical report of Dr. Jimma, and additional treatment reports regarding Plaintiff's acknowledged back problems. (*Id.* at 13-14). In concluding that Plaintiff maintained an RFC to do light work, the ALJ noted that the opinion expressed by the state agency examiner "is internally consistent and consistent with the record in its entirety." (*Id.* at 15). This discussion indicates that the ALJ properly considered the state agency's assessment of Plaintiff's RFC, and supported his own RFC conclusions with substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 85 F. App'x 806, 807 (3d Cir. 2003) (affirming ALJ's consideration of a state agency RFC assessment which was consistent with other medical evidence, and Plaintiff's subjective complaints of more severe impairments lacked credibility).

### D. The Hypothetical Posed to the Vocational Expert at Step Five

Plaintiff alleges that the ALJ erred at step five because the hypothetical posed to the vocational expert "did not include all of Plaintiff's credibly established limitations." (Pl. Mov. Br. at 36). The Third Circuit has held that a hypothetical posed to a vocational expert must include "all of the claimant's credibly established limitations, but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's RFC." *Covone v. Comm'r Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005). Regarding the underlying RFC determination, "the ALJ need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007).

Here, the hypothetical posed by the ALJ to the vocational expert was as follows:

13

> You have a hypothetical [claimant] of the same age, education and work experience as the claimant, at the light exertional level with the following limitations; only occasionally climbs ladders or scaffolds, but frequently can climb ramps, stairs, balance, stoop, kneel, crouch and crawl . . . . Are there jobs in the local or national economy that someone with that work profile could perform?

(Tr. at 66). This hypothetical closely reflects the ALJ's RFC determination, which, as noted above, provided that Plaintiff was capable of light work with some specified limitations. (*Id.* at 13).[2] Plaintiff does not point to any evidence that the ALJ is alleged to have neglected in his hypothetical, and the Court's review of the administrative record can similarly find none. For these reasons, the Court affirms the ALJ's use of this hypothetical at step five. *See Covone*, 142 F. App'x at 588 ("Because the hypothetical posed to the vocational expert reflected claimant's RFC, and that RFC is supported by substantial evidence, we affirm the ALJ's determination that claimant is not disabled.").

## V. Conclusion

For the foregoing reasons, the Court AFFIRMS ALJ Feuer's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[2] In his brief, Plaintiff indicates some confusion with the phrasing of the administrative opinion's RFC findings, which state that Plaintiff's ability to perform light work is limited to "performing only frequent climbing of ramps and stairs," among other activities. (Tr. at 13; Pl. Mov. Br. at 10). This phrasing appears to be a typographical error, as the ALJ's hypothetical to the VE indicated that Plaintiff's RFC was limited to "only occasionally" climbing ladders or scaffolds, "but frequently" climbing ramps, stairs, balancing, and performing other similar activities. (Tr. at 66). Read in context, it appears that the ALJ thus presented the correctly worded RFC formulation to the VE at the hearing prior to issuing the administrative decision. Because the VE's ultimate conclusion was based on the correctly worded RFC, the fact that the ALJ described the RFC incorrectly in the opinion itself is at best harmless error. *See Santiago v. Astrue*, No. 11-3650, 2012 WL 1080181, at *6 (E.D. Pa. Mar. 28, 2012) (finding that ALJ's failure to consider relevant evidence earlier in the disability analysis was rendered harmless by his inclusion of that evidence in hypothetical posed to VE during the disability hearing).